Leon B. Silver (#012884)
lsilver@polsinelli.com
Rebecca N. Lumley (#025604)
rlumley@polsinelli.com
**POLSINELLI SHUGHART PC**
CityScape
One E. Washington St., Ste. 1200
Phoenix, AZ 85004
Phone: (602) 650-2000
Fax: (602) 264-7033

Attorneys for Plaintiff
Origami Owl, LLC

### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Origami Owl, LLC,<br><br>           Plaintiff,<br><br>vs.<br><br>Riley Palmer and Brian Palmer, wife and husband; Tamara Ochoa and Joseph Ochoa, wife and husband; Steffani Brown and John Doe Brown, wife and husband; South Hill Design Corp., an Arizona Corporation,<br><br>           Defendants. | Civil Action No. 2:12-cv-02290-SRB<br><br>**MOTION FOR SANCTIONS FOR SPOLIATION**<br><br>**(EXPEDITED DISPOSITION REQUESTED)**<br><br>(Evidentiary Hearing Set for February 26, 2013) |

Plaintiff Origami Owl, LLC hereby moves the Court for sanctions against Defendants for intentionally destroying and otherwise failing to preserve evidence that they knew would be relevant to this matter. Origami Owl requests that the Court prohibit Defendants from offering any testimony or evidence that they did not intentionally copy Origami Owl's products, documents, photos, web page, marketing platform, or business methods. ("Copied Assets"). Alternatively, the Court should find that Origami Owl is entitled to an adverse inference that Defendants intentionally copied all of Origami Owl's Copied Assets.

This Motion is supported by the accompanying Memorandum of Points and Authorities

**MEMORANDUM OF POINTS AND AUTHORITIES**

I.  **INTRODUCTION**

This matter involves the wholesale copying of not only Origami Owl's product, but also its entire trade dress, business model and concept. The copying was done by a former Origami Owl, Independent Designer/Contractor, Riley Palmer, her husband, Brian Palmer and her friends, Joseph and Tamara Ochoa. Defendants knew that they were at risk of litigation because of their actions from the initial stages.[1]

Despite this, from at least mid-October 2012, Defendants began destroying evidence relevant to this litigation and instructing their employees to do the same. Their instructions included a direction to destroy evidence of anything regarding Origami Owl. Subsequently, in mid-November 2012, both Mr. Palmer and Mr. Ochoa lost possession of their laptop computers and all of the documentation they admit was contained on them.

These are several serious examples of failing to preserve evidence. Other examples will be discussed below.

II. **TESTIMONY REGARDING EVIDENCE DESTRUCTION**

  A. **Defendants Intentionally Directed the Destruction of Relevant Evidence by Their Employees.**

Tiana Hulse worked for South Hill from September 24, 2012 through December 5, 2012. Deposition of Tiana Hulse, Exhibit 2 hereto, at pp. 4 & 81. On October 19, 2012, Defendants' web page went live, offering the copied products for sale to the public. *Id.* at 46. On that same day, Mr. Ochoa sent Ms. Hulse an email directing her that it was "Time to delete all OO documentation. We need to be very careful." *See* Exhibit 3, hereto; Hulse Dep., Ex. 2 at 59, 68. Ms. Hulse also testified that both before and after this lawsuit was filed, Mr. Ochoa and Mr. Palmer told her that "everything that was related to Origami Owl, anything that said Origami Owl on it that was in the office

---

[1] In fact, they inquired of their attorneys about potential claims by Origami Owl as early as August 6, 2012. *See* email correspondence between Defendants and Jeff Babener dated August 6, 2012, attached as Exhibit 1, beginning at page 3.

2

or in any of the computers was being removed and was being deleted." Hulse Dep., Ex. 2 at 68-70.

After being terminated in December 2012, Mrs. Hulse left her laptop, with these emails on them, in the possession of South Hill, *Id.* at 70-71, although South Hill never produced these emails. (Origami Owl was able to obtain this email because it was still on Ms. Hulse's phone. *Id.* at 59, 68-70.)

Additionally, Defendant Brian Palmer – co-founder and Chief Executive Officer of South Hill - testified that South Hill took no steps to preserve any evidence. *See* Deposition of Brian Palmer, Exhibit 4, hereto at 34-35, 48-50.

As it turns out, Defendants failed to produce numerous emails requested by Origami Owl that were subsequently obtained via subpoenas on third parties, including hundreds of emails with the Sheffield Group (their business consulting firm) and emails in which Mr. Ochoa asked Ms. Hulse to copy Origami Owl documents. Hulse Dep., Ex. 2 at 58-63. Defendants have provided no rationale for why this information was not produced by them. Given that Mr. Ochoa and Mr. Palmer told Mrs. Hulse to delete anything regarding Origami Owl, and that Mr. Palmer testified that South Hill made no effort to preserve evidence, it is logical that Defendants also deleted any other incriminating emails, either between themselves or with third-parties.

**B.     Defendants Brian Palmer and Joseph Ochoa Failed to Preserve Relevant Electronic South Hill Documents.**

Mr. Palmer also testified that he used a laptop issued by his former employer, Cisco Systems, to conduct business relating to South Hill and its predecessor TreeBella. *Id.* at 135-137. In fact, Mr. Palmer testified that he conducted approximately fifty percent of South Hill's business on the Cisco computer prior to November 2012 (a period of at least 6 months). *Id.* at 136. Mr. Palmer separated from Cisco in early November 2012. *Id.* at 134. Mr. Palmer returned his laptop to Cisco sometime after his separation without saving any of the emails or other documents regarding South Hill or

3

2841996.1

1  TreeBella. *Id*. 135-137. A subpoena on Cisco turned up no documents from that
2  computer.
3        Mr. Ochoa, also a former Cisco employee, and co-founder and Chief Operating
4  Officer of South Hill, testified that his Cisco-issued laptop contained information
5  regarding the start up of South Hill, including information regarding the process of
6  obtaining charms. Deposition of Joseph Ochoa, Exhibit 5, hereto, at 17-18. He
7  testified that his Cisco laptop was stolen on November 9, 2012, when he left it in Mr.
8  Palmer's unlocked car. *Id.* at 18-19. While he stated that he believed those documents
9  were produced in this case, none were.

10       **C.    Defendants' Conduct is part of Pattern of Obstruction.**

11       There are two additional salient facts that the Court should consider in this
12 motion. First, prior to being deposed in this matter, Ms. Hulse and her family were
13 threatened by both Mr. Palmer and Mr. Ochoa. Hulse Dep., Ex. 2 at 82-86.
14       Second, at the initial temporary restraining order hearing on this matter
15 Defendants represented "they didn't have anything manufactured. They're just resellers
16 of whatever they could go out and find on the market." Transcript of TRO Hearing,
17 attached as Exhibit 6 at pg. 20:18-23. Mr. Ochoa admitted at his deposition that not
18 only had South Hill manufactured charms but that they actually sent Origami Owl's
19 charms to a manufacturer to copy. *See* Ochoa Dep., Ex. 5 at 36-38. Additionally,
20 subsequent to the hearing, Defendants filed an Amended Answer, in which they now
21 admitted to remanufacturing three of Origami Owl's charms. (Although they also
22 falsely stated that they ceased selling those charms.)
23       Origami Owl is left with little ability to determine the full extent of Defendants'
24 infringement given the willful destruction of evidence.[2]

25
26
27
28     [2] This is compounded by the fact that many of the manufacturers with whom Defendants have dealt are located in China. Ochoa Dep., Ex. 5 at 37.

4

2841996.1

## II. LEGAL ARGUMENT

Spoliation is defined as "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Marceau v. International Broth. of Elec. Workers*, 618 F.Supp.2d 1127, 1174 (D. Ariz. 2009) (citing *West v. Goodyear Tire & Rubber Co.,* 167 F.3d 776, 779 (2nd Cir. 1999)). Generally, a party seeking sanctions based on the spoliation of evidence must demonstrate the presence of three elements: (1) that the party having control over the evidence had an obligation to preserve it at the time it was altered or destroyed; (2) that the records were altered, destroyed or not preserved with a culpable state of mind; and (3) that the altered or destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense. *Melendres v. Arpaio*, 2010 WL 582189 at *4 (D.Ariz. 2010) (citing *In re Napster, Inc. Copyright Litigation,* 462 F.Supp.2d 1060, 1078 (N.D.Cal. 2006); *Surowiec v. Capital Title Agency, Inc.*, 2011 WL 1671925 (D. Ariz. May 4, 2011) (quoting *Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494, 509 (D. Md. 2009); *see also Zubulake v. UBS Warburg LLC,* 229 F.R.D. 422, 430 (S.D.N.Y. 2004); *Byrnie v. Town of Cromwell,* 243 F.3d 93, 107-12 (2nd Cir. 2001)).

A party engages in spoliation of documents as a matter of law if it had "some notice that the documents were potentially relevant" to the litigation before they were destroyed or not preserved. *U.S. v. Kitsap Physicians Service,* 314 F.3d 995, 1001 (9th Cir. 2002) (quoting *Akiona,* 938 F.2d at 161).

**A.   Defendants' duty to preserve arose no later than October 19, 2012.**

The duty to preserve arises "when a party knows or should know that certain evidence is relevant to pending or future litigation." *Surowiec v. Capital Title Agency, Inc.*, 2011 WL 1671925 (D. Ariz. May 4, 2011). "As soon as a potential claim is identified, a litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action." *Arpaio*, 2010 WL 582189 at *4 (citing *Napster,* 462 F.Supp.2d at 1067; *Zubulake v. UBS Warburg LLC,* 220 F.R.D. 212, 218

(S.D.N.Y.2003)). "The duty to preserve material evidence arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation." *Marceau*, 618 F.Supp.2d at 1174 (citing *World Courier v. Barone,* 2007 WL 1119196, at *1 (N.D.Cal. 2007); *Kronisch v. United States,* 150 F.3d 112, 126 (2nd Cir. 1998); *Fujitsu Ltd. v. Federal Express Corp.,* 247 F.3d 423, 436 (2nd Cir. 2001)) ("The obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation.").[3]

Here, at the very earliest, Defendants had a duty to preserve evidence from the moment they set out to recreate what Origami Owl had already created. At the latest, the duty commenced in August 2006, once they exchanged correspondence with their counsel regarding their concerns of potential liability. *See* Babener Correspondence, Ex. 1.

In any case, by the time they decided to go live with their web page - full of copied products, copied designs, copied functionality etc. - Defendants unquestionably knew they would be facing potential litigation from Origami Owl. That date was October 19, 2012. Interestingly, this was the very same day that Defendants directed their staff to destroy all documents or evidence in their possession relating to Origami Owl. It is beyond reasonable dispute that the Defendants gave this instruction in order to prevent Origami Owl from obtaining complete evidence of their actionable conduct.

---

[3] It is therefore clear that the filing of a lawsuit is not necessary to start the clock; the duty generally begins much earlier. *Arista Records LLC v. Usenet.com, Inc.,* 608 F.Supp.2d 409, 430 (S.D.N.Y. 2009) (citing *Fox v. Riverdeep, Inc.,* 2008 WL 5244297, *7 (E.D.Mich. 2008) *Google Inc. v. American Blind & Wallpaper Factory,* 2007 WL 1848665, at *1 (N.D.Cal. 2007).

6

2841996.1

**B.    Defendants had a culpable state of mind**

*1.    Defendants' spoliation of evidence was willful and/or grossly negligent.*

Defendants' spoliation here was willful. When a party on notice intentionally destroys, rather than accidentally loses, evidence, it is a "willful" spoliator -- even if it did not intend to deprive an opposing party of relevant evidence. *Melendres*, 2011 WL 6740709 at * 2 (citing *Leon v. IDX Systems Corp.*, 464 F.3d 951, 959 (9th Cir. 2006)); *Aiello v. Kroger Co.*, 2010 WL 3522259, at *3 (D. Nev. 2010). "A party's destruction of evidence qualifies as willful spoliation if the party has 'some notice that the documents were potentially relevant to the litigation before they were destroyed.'" *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006) (quoting *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1001 (9th Cir. 2002)).

There are at least three separate categories of spoliation in this matter: (1) Defendants' intentional destruction of evidence relating to Origami Owl; (2) Mr. Palmer and Mr. Ochoa's failure to preserve the evidence on their Cisco laptops; and (3) Defendants' failure to issue a preservation instruction to their staff.

The intentional destruction of evidence by Defendants, and their instruction to their employees to do the same, amounts to willful spoliation. *See, e.g. Leon*, 464 F.3d 951 (finding willful spoliation based on intentional deletion of files from laptop); *Melendres*, 2011 WL 6740709 (finding willful spoliation based on shredding documents). Defendants "loss" of Mr. Ochoa's Cisco laptop and turning in Mr. Palmer's laptop without preserving evidence also amounts to willful spoliation. *See, e.g., Aiello*, 2010 WL 3522259 (finding willful spoliation for losing video after notice of litigation). NFinally, a defendant's failure to suspend its ongoing email destruction and to capture evidence on one of the key individuals' computer amounts to gross negligence. *Surowiec*, 2011 WL 1671925, at *8. That Defendants' failure to issue an instruction to preserve all documents resulted in the destruction of evidence can hardly

7

be questioned, considering the amount of evidence that had to be obtained from third-parties that should have been produced by Defendants.

### 2. *Defendants' spoliation of evidence was in bad faith.*

Although a finding of bad faith is not a perquisite for finding spoliation, when bad faith has been established the court may award a more severe sanction. *See, e.g. Liss v. Exel Transp. Servs., Inc.*, 2008 WL 370886, at *2 (D. Ariz. 2008) (finding of bad faith not prerequisite for spoliation); *Mkhitaryan v. U.S. Bank, N.A.*, 2013 WL 557275 (D. Nev. 2013); *Bump Babies, Inc. v. Baby the Bump, Inc.*, 2011 WL 5037070 at * 4 (C.D. Cal. 2011); *Keithley v. Homestore.com, Inc.*, 2008 WL 4830752 (N.D. Cal. 2008) (finding of bad faith a consideration in determining severity of sanction to impose).

To find bad faith in the spoliation context, "the district court must find that the spoliating party intended to impair the ability of the potential defendant to defend itself." *Hynix Semiconductor, Inc. v. Rambus, Inc.*, 2012 4328999 at *37 (N.D. Cal. 2012) (citations omitted). "The fundamental element of bad faith spoliation is advantage-seeking behavior by the party with superior access to information necessary for the proper administration of justice." *Id*.

Here, Defendants' spoliation was in bad faith because it was done for the purpose of seeking an advantage in the litigation. The email from Mr. Ochoa to Ms. Hulse states "Time to delete all OO documentation….We need to be VERY careful." *See* Exhibit 3 hereto. Further, the fact that both Mr. Palmer and Mr. Ochoa lost all of the relevant information on their Cisco computers simply cannot be found to be innocent given the circumstances. Rather, it shows that not only was the conduct intentional, but that Defendants were attempting to fabricate justifications for the lack of evidence from an early point.

### C. **The evidence destroyed was relevant and prejudicial.**

Only a "minimum link of relevance" is required to permit a jury to draw an adverse inference. *Marceau v. Int'l Broth. Of Elec. Workers*, 618 F. Supp. 2d 1127, 1174 (D. Ariz. 2009). Where "the relevance of . . . [destroyed] documents cannot be

8

2841996.1

clearly ascertained because the documents no longer exist," a party "can hardly assert any presumption of irrelevance as to the destroyed documents." *LaJocies*, 2011 WL 1630331, at *2 (quoting *Leon*, 464 F.3d at 959. The "relevance" requirement has been satisfied by the deletion of emails from one of the key players. *See Surowiec*, 2011 WL 1671925, at *8.

Courts in the Ninth Circuit also analyze the prejudice to the innocent party caused by the destruction of evidence, to which the relevance of the destroyed documents is a component. Thus, courts examine "whether the [spoiling party's] actions impaired [the non-spoiling party's] ability to go to trial or threatened to interfere with the rightful decision of the case." *Leon*, 464 F.3d at 959 (alteration in original) (citations omitted). This prejudice inquiry "looks to whether the spoiling party's actions impaired the non-spoiling party's ability to go to trial or threatened to interfere with the rightful decision of the case." *Id.* at 959. The Ninth Circuit Court of Appeals has found prejudice when a party's refusal to provide certain documents forced the other party "to rely on incomplete and spotty evidence" at trial. *Id.* (quoting *Anheuser-Busch*, 69 F.3d at 354).

Here, because of the intentional, willful and bad faith destruction of documents by Defendants, Origami Owl is left to prosecute its case based on incomplete and spotty evidence. Although Origami Owl contends that the weight of the evidence still supports its claims, there is no way for Origami Owl to reconstruct all of the evidence destroyed by Defendants and to ever know the full extent of Defendants' actionable conduct.

### III.   REQUESTED SANCTIONS

Because spoliation is considered an abuse of the judicial process, courts may impose sanctions as part of their inherent power to manage their own affairs so as to achieve the orderly and expeditious disposition of cases. *Surowiec v. Capital Title Agency, Inc.*, 790 F.Supp.2d 997, 1008 (D. Ariz. 2011) (citations omitted). "Sanctions that a federal court may impose for spoliation include assessing attorney's fees and

9

2841996.1

costs, giving the jury an adverse inference instruction, precluding evidence, or imposing the harsh, case-dispositive sanctions of dismissal or judgment." *Id*.

While the court has discretion to impose spoliation sanctions, it "must determine which sanction best (1) deters parties from future spoliation, (2) places the risk of an erroneous judgment on the spoliating party, and (3) restores the innocent party to their rightful litigation position." *Id.* (citations omitted).  Dismissal, the most drastic sanction, generally requires a finding that the conduct was "due to willfulness, bad faith or fault of the party," including "[d]isobedient conduct not shown to be outside the litigant's control." *In re Phenylpropanolamine (PPA) Products Liability Litig.*, 460 F.3d 1217, 1233 (9th Cir.2006).

Here, it was well within Defendants' control whether to intentionally destroy or to preserve evidence.  From an email - that was only produced because it was on a third-party's phone - it is clear that Defendants intentionally destroyed evidence in an attempt to limit their liability for the wholesale copying of Origami Owl's business.  Defendants' conduct was willful and in bad faith.

Defendants have shown a willingness to destroy evidence, coerce witnesses and mislead this Court.  Origami Owl is entitled for the Court to bar Defendants from offering testimony or evidence that they did NOT set out to and copy its products, documents, photos, web page, marketing platform, or business methods, etc.  This would leave it to Origami Owl to demonstrate to the Court that it invested its time, money and creative efforts to create something for which it is entitled to legal protection.  Once Origami Owl meets that threshold, a preliminary (and in fact, permanent) injunction should issue in its favor, and Origami Owl should be awarded its costs and fees.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff Origami Owl respectfully requests that the Court prohibit Defendants from offering any testimony or evidence that they did not intentionally copy Origami Owl's products, documents, photos, web page, marketing

platform, or business methods.  In the alternative, Origami Owl requests an adverse inference that the documents and evidence destroyed by Defendants would have shown that Defendants intentionally copied all of Origami Owl's products, documents, photos, web page, marketing platform, or business methods.  In either case, Origami Owl requests and award of costs and fees.

RESPECTFULLY SUBMITTED this 22nd day of February, 2013.

POLSINELLI SHUGHART PC


By: *s/ Leon B. Silver*
Leon B. Silver
Rebecca N. Lumley
CityScape
One E. Washington St., Ste. 1200
Phoenix, AZ 85004
Attorneys for Plaintiff
Origami Owl, LLC

## CERTIFICATE OF SERVICE

I hereby certify that on February 22, 2013, I electronically transmitted the foregoing document to the U.S. District Court Clerk's Office by using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrant(s):

William D. Holm (BHolm@jshfirm.com)
Erik J. Stone (EStone@jshfirm.com)
Michael W. Halvorson (mhalvorson@jshfirm.com)

I further certify that on February 22, 2013**:** I arranged for the hand-delivery of a paper courtesy copy of the foregoing document and the Notice of Electronic Filing to the assigned Judge:

Hon. Susan R. Bolton
United States District Court
Sandra Day O'Connor U.S. Courthouse, Courtroom 502
401 West Washington St., SPC 50
Phoenix, AZ  85003-2153

*s/ Helena Lipski*

2841996.1