Leon B. Silver AZ (#12884)
lsilver@polsinelli.com
Rebecca N. Lumley AZ (#25604)
rlumley@polsinelli.com
**POLSINELLI SHUGHART PC**
CityScape
One E. Washington St., Ste. 1200
Phoenix, AZ 85004
Phone: (602) 650-2000
Fax: (602) 264-7033

Attorneys for Plaintiff
Origami Owl, LLC

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Origami Owl, LLC, <br><br> Plaintiff, <br><br> vs. <br><br> Riley Palmer and Brian Palmer, wife and husband; Tamara Ochoa and Joseph Ochoa, wife and husband; Steffani Brown and Marty Brown, wife and husband; South Hill Design Corp., an Arizona Corporation, <br><br> Defendants. | CASE NO. 2:12-CV-02290-SRB <br><br> **AMENDED VERIFIED COMPLAINT AND APPLICATION FOR PRELIMINARY AND PERMANENT INJUNCTION** |

Plaintiff Origami Owl, LLC, alleges as follows:

**PARTIES**

1. Origami Owl, LLC ("Origami Owl") is an Arizona limited liability company having its principal place of business in Arizona.

2. Defendants Riley and Brian Palmer are husband and wife and reside in Maricopa County, Arizona.

3. Defendants Tamara and Joseph Ochoa are husband and wife and reside in Maricopa County, Arizona.

4. Defendants Steffani and Marty Brown are husband and wife and reside in Maricopa County, Arizona.

5. Defendant South Hill Designs Corp. ("SHDC") is a Delaware Corporation. SHDC's principals are Defendants Riley and Brian Palmer and Joseph and Tamara Ochoa.

## JURISDICTION AND VENUE

6. This is an action for, among other things, copyright infringement arising under the Federal Copyright Act, Title 17, United States Code and for unfair competition arising under 15 U.S.C. § 1125(a).

7. This Court is vested with jurisdiction of the parties and the subject matter of the action under 28 U.S.C. § 1338(a) and (b).

8. Venue is proper in this District pursuant to 28 U.S.C. §1400 and 28 U.S.C. § 1391(b) (1) and (2) because, *inter alia*, Defendants reside in this judicial District and a substantial part of the events or omissions giving rise to this lawsuit occurred in this judicial District.

## FACTUAL ALLEGATIONS

9. Origami Owl was founded in 2010 by Isabella Weems. At the time, Miss Weems was 14 years old. With her 16th birthday in sight, Miss Weems desired to start earning and saving money so she could buy her first car. She saved $350 from babysitting and started making customized locket necklaces which she sold to her friends and family. The lockets were a hit and gained popularity quickly.

10. On February 24, 2011, Origami Owl, LLC was formed to sell the signature designs, called "Living Lockets™".

11. As the business grew, Origami Owl's signature lockets were sold through a kiosk at Chandler Fashion Mall. In 2012, with sales still growing, Origami Owl decided to switch to the Direct Sales Party Plan Model and only sell the lockets on-line and through independent consultants, referred to as "Independent Designers." Such Independent Designers would contract with Origami Owl to sell the signature lockets at home parties or the like, utilizing the Direct Sales Party Plan Model.

2842607.3

12. Creating an Origami Owl Living Locket™ necklace is a five-step process. First, the customer selects a locket. Origami Owl offers lockets in Gold, Rose Gold, Rose Gold with CZ crystals, Silver, and Silver with CZ crystals. Second, the customer selects a chain on which to hang the locket. Third, the buyer can choose what Origami Owl calls a "plate." The "plate" goes inside the locket and has a saying stamped on it such as "Dream," "Love," or "Faith." Fourth, the customer selects charms to insert inside the locket. There are hundreds to choose from to "Tell your story," hence Origami Owl's tag line "You tell stories with words – We tell stories with Jewelry™." For a Teacher, for example, one could select an apple charm, with a heart, with a music note, to symbolize that the wearer loves being a Music Teacher. In the charm section, there are different categories of charms for instance "Vintage", "Travel", "Hobbies and Occupation." The fifth and final step in designing a Living Locket™ necklace, is to pick a "dangle," which is a small object or bead that hangs from the chain with the locket.

13. To date, Origami Owl has offered over 300 charm designs for sale as well as several lockets, dangles, and plates. Origami Owl has registered copyrights on more than 200 charm designs and claims copyrights on the majority of them.

14. On February 24, 2012, Defendant Riley Palmer became an Independent Designer for Origami Owl by registering as such via Origami Owl's on-line application process. In doing so, Ms. Palmer agreed to Origami Owl's "Designer™ Agreement Terms and Conditions" ("Designer Agreement") and to the "Origami Owl, LLC. Policies & Procedures" ("Policies").

15. The Designer Agreement provides that Origami Owl's copyrighted and copyrightable materials are considered its Intellectual Property and are owned solely by Origami Owl and, that upon termination of the Independent Designer relationship, the Independent Designer would cease use of such materials immediately.

16. The Designer Agreement also provides that Independent Designers will not use or disclose customer and consultant lists. *Id.*

2842607.3

17. The Policies provide that, upon separation from Origami Owl, the Independent Designer will (1) take all action reasonably necessary to protect Origami Owl's materials, confidential information, and intellectual property, (2) not utilize or disclose to any party any proprietary data, processes, or company information regarding supplies, pricing and commission structures, to develop, consult with, or be employed by or share with any other party planning, network marketing or direct sales organization. Further, the Policies provide that Origami Owl may seek equitable relief in addition to other remedies in the event of such actions.

18. The Policies further provide that upon separation, an Independent Designer may not solicit, recruit, approach, contact, or discuss with any current/active Origami Owl Independent Designer the opportunity to join another party planning, network marketing or direct sales organization. *Id.*

19. During the course of her contract as an Independent Designer for Origami Owl, Ms. Palmer frequently posted about Origami Owl, its products, and her sales efforts on various websites, including Facebook, Pinterest, and Scottsdale Moms Blog.

20. On February 24, 2012, Ms. Palmer ordered $399.00 in Origami Owl product (a "Ten Person Party Business Package"). Through May 14, 2012, Ms. Palmer ordered additional Origami Owl product. On October 4, 2012, Ms. Palmer received a refund for $896.50 in Origami Owl product that she had returned by mail.

21. On September 25, 2012, Ms. Palmer terminated her Designer™ Agreement and thus, her engagement as an Independent Designer.

22. While Ms. Palmer was working as an Independent Designer or shortly thereafter, Defendants commissioned a foreign company to replicate Origami Owl's Living Locket™ product, including its lockets, chains, plates, charms and dangles.

23. On or around October 19, 2012 Origami Owl discovered that Defendants and others were selling and/or preparing to sell via the direct sales model utilized by Origami Owl, products almost identical to Origami Owl's signature lockets, including copyrighted materials, through a new company called South Hill Designs Corp.

2842607.3

("SHDC"). Per the Arizona Corporation Commission website, the contact person for SHDC is Defendant Brian Palmer.

24. SHDC established a website, www.SouthHillDesigns.com, with content nearly identical to that found on Origami Owl's website, www.origamiowl.com.

25. SHDCs' website features an "Our Story" page, similar to Origami Owl's. There, SHDCs falsely claims to be the "brainchild" of Defendant Tamara Ochoa, Riley and Brian Palmer's friend.

26. SHDC markets the same business model as Origami Owl, the same process for designing lockets, the same product design, and Origami Owl's copyrighted charms.

27. SHDC marketed the same exact charm categories as Origami Owl. When you click on a category - for instance "Love" - SHDC had the exact same charms in the exact same order that Origami Owl had on their website.

28. Replicating Origami Owl's tagline "You tell stories with words – We tell stories with Jewelry™," SHDC uses language on its website such as "Share Your Story" and "Are you Ready to Share Your Story?"

29. SHDC copied the receipts Origami Owl Independent Designers use to collect orders from customers, changing only a few of the hundreds of words.

30. In violation of the Designer Agreement and Policies, Ms. Palmer and SHDC solicited Origami Owl's Independent Designers, through various means including email.

**COUNT I**

**(Willful Copyright Infringement in Violation of**

**17 U.S.C. § 501** *et seq.* **Against All Defendants***)*

31. Plaintiff incorporates the allegations in the foregoing paragraphs as if fully set forth herein.

32. Origami Owl has received certificates of registration for more than 200 of its charm designs.

5

33. Origami Owl further claims copyrights for each of its original and derivative works.

34. Defendants have willfully infringed on Origami Owl's copyrights in its products by copying, creating derivative works therefrom, manufacturing and/or selling copies and derivative works which were unlawfully copied from Origami Owl's products, and were sold and are being sold without the authority, permission, or consent of Origami Owl.

35. Origami Owl has certificates of registration from the United States Copyright office for at least 87 original works copied by Defendants. See chart attached as **Exhibit A** hereto, "Original Works Copied by Defendants."

36. Origami Owl has certificates of registration from the United States Copyright Office for at least 34 derivative works copied by Defendants. See chart attached as **Exhibit B** hereto, "Derivative Works Copied by Defendants."

37. Origami Owl has been and continues to be irreparably damaged by Defendants' conduct. Defendants' conduct has: (1) deprived and will continue to deprive Origami Owl of revenues; (2) injured Origami Owl's reputation, goodwill, and relations with existing wholesale and retail customers; and (3) imposed substantial expenses on Origami Owl to enforce its copyrights.

38. Origami Owl seeks injunctive relief to restrain Defendants and all persons acting in concert with them from further acts in violation of its rights under the copyright laws.

39. Origami Owl further seeks to recover from Defendants the damages incurred as a result of Defendants' wrongful acts of infringement, and the gains, profits, and advantages that Defendants have obtained from such conduct. Defendants' wrongful acts have proximately caused and will continue to cause Origami Owl substantial injury, including damages to its product identity, loss of the value of its signature products, goodwill and reputation, and lost sales. Defendants' conduct has caused irreparable harm and injury, in an amount to be determined at trial.

2842607.3

40. Plaintiff seeks an award of attorneys fees and costs pursuant to 17 U.S.C. § 505.

## COUNT II

**(Unfair Competition Under 15 U.S.C. § 1125(a) Against All Defendants)**

41. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

42. Defendants conduct constitutes misappropriation and/or false designation of origin and false and misleading representations in that Origami Owl's unique and distinctive product designs are represented to be created by these Defendants as their own original products. Defendants' conduct is likely to cause mistake or deceive the public as to the origin of the infringing jewelry; is likely to cause and has caused confusion in the marketplace; falsely and erroneously suggests a connection or association with Origami Owl and its products; and deceives customers as to the source, sponsorship, and origin of such goods.

43. In addition to works copied by Defendants for which Origami Owl is the owner of registered copyrights, Defendants copied from Origami Owl other products for which Origami Owl does not currently have registered copyrights. In total, Defendants have copied at least 166 items from Origami Owl, including lockets, charms, plates, and coins. See list attached hereto as **Exhibit C**.

44. These Defendants' willful activities have had and will continue to have a substantial adverse effect on Plaintiff's existing and projected sales in interstate commerce of the products, as well as the reputation and goodwill of Origami Owl's business connected with its products, and the loss of customers and independent contractors to sell its products. The aforesaid acts of these Defendants constitute unfair competition, false designations of origin, and false representations in commerce in violation of 15 U.S.C. § 1125(a).

45. Origami Owl has been and continues to be damaged by Defendants' conduct. Defendants have profited by their conduct, and unless such conduct is enjoined, Origami Owl and its goodwill and reputation will suffer substantial injury,

2842607.3

including loss of revenue and customers, loss of independent contractors, dilution of goodwill, confusion of potential customers, injury to its reputation, and diminution in the value of its products. Defendants' conduct has caused irreparable harm and injury to Plaintiff in an amount to be determined at trial.

## COUNT III

### (Common Law Unfair Competition Against All Defendants)

46. Plaintiff incorporates the foregoing allegations as if set forth fully herein.

47. Defendants' conduct constitutes unfair, unlawful, and fraudulent business practices in that these Defendants used Riley Palmer's position of trust with Plaintiff by virtue of Ms. Palmer's independent contractor relationship with Plaintiff to obtain an unlawful business advantage, and unlawfully compete with Plaintiff.

48. Defendants' conduct also constitutes unfair competition in that they misappropriated, manufactured, or commissioned to be manufactured and sold products which were products of or imitations of products created by Origami Owl, benefited from Origami Owl's success and well-established customer recognition, popularity, and collectibility of its products, exploited the goodwill, reputation and business value of Origami Owl's rights in its products, engaged in a campaign of disparagement regarding Origami Owl and its principals, and copied products, business practices, and documents that defendants only had access to by virtue of Riley Palmer's contract with Origami Owl. Defendants' imitation of Origami Owl's copyright-protected jewelry products enabled Defendants to: (1) save the costs of creating their own original jewelry designs; (2) take advantage of the popularity of the established and recognizable Origami Owl jewelry product line to usurp Plaintiff's established customer base; and (3) mass-produce their competing products, thereby obtaining an unfair commercial advantage.

49. In addition to works copied by Defendants for which Origami Owl is the owner of copyright registrations, Defendants copied from Origami Owl works for which Origami Owl does not currently have a registered copyright. In total, Defendants have

8

copied at least 166 items from Origami Owl, including lockets, charms, plates, and chains. See **Exhibit C**.

50. These wrongful acts have proximately caused and will continue to cause Plaintiff substantial injury, including damages to Origami Owl's product identity, loss of sales, and loss of control over Origami Owl's goodwill and reputation. Defendants' conduct has caused irreparable harm and injury to Plaintiff, in an amount to be determined at trial.

51. Defendants' conduct was willful, and attended by circumstances of fraud, malice or a willful and wanton disregard of Plaintiff's rights.

## COUNT IV

### (Civil Conspiracy Against All Defendants)

52. Plaintiff incorporates previous allegations as if fully set forth herein.

53. Upon information and belief, Riley Palmer, in collusion with Brian Palmer, Joseph Ochoa, Tamara Ochoa, and others obtained certain pieces of Origami Owl products and photos of such products and provided such pieces to manufacturers in order to create infringing knock-offs, and to unfairly and unlawfully compete with Plaintiff.

54. Upon information and belief, Defendants collaborated and conspired to procure the infringing knock-offs for distribution.

55. Plaintiff has been and continues to be damaged by these Defendants' conduct. Defendants have profited by their conduct, and unless such conduct is enjoined, Plaintiff will suffer substantial injury, including loss of revenue and customers, dilution of goodwill, confusion of potential customers, injury to Origami Owl's goodwill and reputation, and diminution in the value of the Origami Owl products. Defendants' conduct has caused irreparable harm and injury in an amount to be determined at trial.

2842607.3

56. In addition, the Defendants' actions were attended by circumstances of fraud, malice, or willful and wanton conduct thereby entitling Plaintiff to an award of exemplary or punitive damages.

## COUNT V

**(Breach of Contract Against Defendant Riley Palmer)**

57. Plaintiff incorporates all previous allegations contained in the previous paragraphs as if fully set forth herein.

58. Riley Palmer and Origami Owl entered into an agreement, the terms of which are more fully described at Paragraphs 14 - 18 herein.

59. Origami Owl performed all duties and obligations required under the agreement, with the exception of any duties and obligations that were excused or which Origami Owl was otherwise prevented by Ms. Palmer from performing.

60. By virtue of the conduct described above, Riley Palmer has breached the agreement, including but not limited to, the covenant of good faith and fair dealing implied by law into the agreement.

61. As a direct, consequent, foreseeable, and proximate result of these breaches, Plaintiff has been damaged in an amount to be determined at trial.

62. Plaintiff also seeks its attorneys' fees pursuant to A.R.S. § 12-341.01A.

## COUNT VI

**(Application for Preliminary and Permanent Injunction Against All Defendants)**

63. Plaintiff incorporates all previous allegations contained in the previous paragraphs as if fully set forth herein.

64. Pursuant to Rule 65, Fed. R. Civ. P., and the Court's inherent equitable powers, Plaintiff herein respectfully requests that the Court issue a Preliminary Injunction and Permanent Injunction against Defendants. Plaintiff supports this Count with the verification of Jeff Reinhart, Plaintiff's Verified Complaint and Application for Temporary Restraining Order, Plaintiff's Memorandum of Law in Support of its

2842607.3

Verified Complaint and Application for Temporary Restraining Order and Preliminary Injunction, and the foregoing allegations.

65. As a result of Defendants' conduct described herein (including copyright infringement, federal unfair competition, common law unfair competition, civil conspiracy, and breach of contract), Plaintiff has sustained and will continue to sustain irreparable injury unless Defendants are enjoined from infringing Origami Owl's copyrights and from conduct that constitutes false designation of origin and unfair competition.

**WHEREFORE**, Plaintiff prays for the following relief:

A. Preliminary and permanent injunctive relief enjoining Defendants, along with their respective officers, directors, principals, agents, representatives, servants, employees, affiliates, successors or assigns, and any person or entity acting on their behalf or in concert or participation with them, from manufacturing, procuring the manufacture of, making, producing, reproducing, copying, distributing, transferring, displaying, marketing, advertising, shipping, importing, exporting, licensing, offering to license, selling or offering to sell:

    1. Any product or other item that embodies or depicts in whole or in part, or incorporates or uses in any manner, the products listed on Exhibits A, B, or C hereto.

    2. Engaging in any and all further acts of infringement of the items noted Exhibits A, B, or C hereto.

    3. Asserting any ownership of rights or any right, title or interest in the items listed on Exhibits A, B, or C hereto.

    4. Any marketing or advertising materials that embody or depict in whole or in part, or incorporate or use in any manner, any of the items listed on Exhibits A, B, or C hereto.

B. Preliminary and permanent injunctive relief enjoining Defendants, along with their respective officers, directors, principals, agents, representatives, servants,

2842607.3

employees, affiliates, successors or assigns, and any person or entity acting on their behalf or in concert or participation with them from:

    1.    Transferring, disposing of, destroying, spoliating or secreting any documents, records, recordings or materials, whether in electronic or non-electronic form, that evidence, relate to or pertain to any aspect of the products, items or other materials referred to in paragraphs A(1)-(4) above, inclusive, including without limitation any and all agreements, contracts, correspondence, communications, invoices, purchase orders, sales orders, manufacturing records, import or export records, sales records, ledgers, inventory records and shipping records relating thereto.

    2.    Transferring, disposing of, destroying, spoliating or secreting any documents, records, recordings or material, whether in electronic or non-electronic form, that in any manner evidence, relate to or pertain to any products, services or activities using or displaying any simulation, counterfeit, reproduction or copy of, or are derived from, any of the items identified in paragraphs A(1)-(4) above.

    3.    Transferring, disposing of, destroying, spoliating, secreting or exporting any products, product packaging, labels, signs, prints, dies, wrappers, receptacles, advertisements or any other tangible items (including without limitation computer files) that in any manner utilize, contain, evidence, reproduce, display, or relate to any simulation, counterfeit, reproduction or copy of, or are derived from the products, items or other materials referred to in paragraphs A(1)-(4) above, inclusive, which are incorporated herein by this reference.

    4.    Transferring, disposing of, destroying, spoliating, secreting or exporting any plates, molds, matrices, and other means of making or manufacturing (i) the products, items or other materials referred to in paragraphs A(1)-(4) above, inclusive, or (ii) any reproduction, counterfeit, copy, substantially similar likeness, or derivative of Origami Owl's works.

2842607.3

5. Assisting, aiding or abetting any other entity or person in engaging in or performing any of the activities referred to in paragraphs A (1)-(4) and B (1)-(4), above.

C. That Defendants be required to procure the return, and to withdraw and recall, from any and all channels of trade and distribution, including without limitation from Independent Artists, retail shelves and from on-line retailers, all of the products that are referred to at paragraphs A (1)-(4), inclusive. As to each entity or person returning such products, Defendants shall refund all monies paid by each entity or person in connection with such products and shall reimburse each such entity or person for all associated shipping charges.

D. That Defendants be required to hand serve upon Origami Owl's counsel a declaration, made under oath, that sets forth fully and completely the following information: (a) the identity of each and every product or other item manufactured, marketed, displayed, distributed, imported, exported, sold or offered for sale by or for Defendants that are referred to in paragraphs A (1)-(4), inclusive for each such product or other item, the number of units manufactured, marketed, displayed, distributed, shipped, imported, exported, sold or offered for sale by or for Defendants; (c) for each unit of each such product, package or other item, the purchaser, transferee or recipient of each such unit(s), the quantities acquired by such purchaser, transferee or recipient and complete contact information (including without limitation the address, telephone number, fax number and email address where known) for each such purchaser, transferee or recipient; (d) for each unit of such product or other item, the current or last known location of each such unit, including without limitation the location of all such products or other items in Defendant's inventory; and (v) for each person or entity to whom or which Defendants have promoted, advertised, marketed or offered to sell any product or other item that is the subject of this action, the identity of, and complete contact information for (including without limitation the address, telephone number, fax number and email address where known), each such person or entity.

13

2842607.3

E.   That Defendants be required to make written contact with (i) each Independent Artist, retailer, distributor, wholesaler, importer, exporter, customer, licensee or any other person and entity to or through whom Defendants have shipped, transferred, imported, exported or sold any product or other item that is the subject of this action; and (ii) each Independent Artist, retailer, distributor, wholesaler, licensee, potential licensee, customer, potential customer or any other person and entity who Defendants have within the past one hundred and twenty days in marketing, promoting or advertising any product or other item that is the subject of this action and shall provide notice to such persons of the relief granted herein;

F.   At Defendants' expense, Defendants shall post in legible and conspicuous print a notice of the outcome of this action, upon the home page of SOUTH HILL DESIGNS CORP.'s web site at http://www.southhilldesigns.com;

G.   That Defendants be required to pay to Origami Owl at Origami Owl's election either (a) such damages as Origami Owl has sustained as a result of Defendants' copyright infringement, together with all gains, profits, and advantages derived therefrom by Defendants; or (b) statutory damages of not less than $150,000.00 for each willful infringement of the Origami Owl copyright, pursuant to 17 U.S.C. § 504;

H.   An award of Origami Owl's costs and attorneys' fees, pursuant to 17 U.S.C. § 505 and A.R.S. § 12-341.01 and/or the parties' agreements;

I.   An accounting of all revenues received by Defendants for their wrongful sale of the SHDC products;

J.   Judgment against Defendants for Plaintiff's actual and punitive damages in an amount to be determined at trial;

K.   Pre-judgment and post-judgment interest as permitted by law; and

L.   Any other or further relief as the Court deems just and proper.

14
2842607.3

RESPECTFULLY SUBMITTED this 3rd day of April, 2013.

POLSINELLI SHUGHART PC


By: */s/ Leon B. Silver*
    Leon B. Silver
    Rebecca N. Lumley
    CityScape
    One E. Washington St., Ste. 1200
    Phoenix, AZ 85004
    Attorneys for Plaintiff
    Origami Owl, LLC

2842607.3

## VERIFICATION

I, JEFF REINHART, declare:

I am the Chief Operating Officer of Origami Owl, LLC, the plaintiff in this action. I have read the foregoing Amended Verified Complaint and Application for Preliminary and Permanent Injunction and have personal knowledge of the contents thereof or have investigated matters in my role as Chief Operating Officer sufficient to provide this verification on behalf of the company. The matters set forth appear to be true and correct to the best of my knowledge and information.

I have reviewed each of the exhibits cited in the Amended Verified Complaint and attached thereto. Each such Exhibit is a true and correct copy of an electronic document or image that I viewed or discovered or is a summary of such documents.

I declare under penalty of perjury that the forgoing is true to the best of my knowledge.

Executed this 25th day of March, 2013.

By _____
JEFF REINHART